Gottlieb Somer, Plff. in Err., v. Charles C. Harrison, et al.

A workman employed on the fourth floor joists of a building in which the floor boards have not been laid, and having an opportunity to know that fellow servants are cleaning away rubbish from the loose boards on the joists of the eighth floor, takes the risks incident to his employment, and cannot recover damages from his employer for injuries by a brick thrown down upon him.

(Argued March 22, 1887. Decided April 4, 1887.)

January Term, 1886, No. 216, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error to Common Pleas No. 1 of Philadelphia County to review a judgment of compulsory nonsuit in an action of trespass on the case. Affirmed.

NOTE.—For the responsibility of an employer for injury inflicted upon an employee by the act of a fellow servant, see note to Keys v. Pennsylvania Co. 1 Sad. Rep. 316.

For authorities bearing on the doctrine of assumption of risk, see the following editorial notes presenting the authorities on their respective phases of the subject: Effect of assurance of safety given by the master or a coservant, note to McKee v. Tourtellotte, 48 L. R. A. 542; the right of a servant who continues work on the faith of his master's promise to remove a specific cause of danger, note to Illinois Steel Co. v. Mann, 40 L. R. A. 781; assumption of danger of electric shock, note to Western U. Teleg. Co. v. McMullen, 32 L. R. A. 351; when risks outside scope of employment are deemed to be assumed, note to Olson v. Minneapolis & St. L. R. Co. 48 L. R. A. 803; assumption by volunteer of risks of service, note to Evarts v. St. Paul, M. & M. R. Co. 22 L. R. A. 663.

This was an action by Somer for injuries received in December, 1880, while employed by defendants on the sugar house they were building, the floors of which had not been laid, but there being at different places loose boards to walk and work on.

At the trial before PEIRCE, J., the following facts appeared by the plaintiff's evidence:

At 7 in the morning a gang of men was sent to the eighth floor to clear up the rubbish there, which consisted of loose bricks, mortar, blocks, and the like, and to dump it down through the open floors to the cellar; also to take up the old loose boards, and pile the new floor boards conveniently for the floor layers. It was shown that both the old and the new boards had rubbish on them. These men were working on a temporary platform composed of loose boards laid on the joists, and could not see anyone below them. It was further shown that at about 9.30 A. M. Somer was ordered by General Superintendent Carstens to report to the foreman of the machinists, who sent him to the fourth floor to drill holes in iron plates, to do which he was obliged to sit astride an iron girder, and could not, without danger of falling off, look up. While they were thus working, Alfred Harrison, one of the defendants, and General Superintendent Carstens came up the ladder, which was about 8 feet from where Somer was working, and stopped and saw him there. Harrison went on up to the eighth floor, and saw the gang of men at their work there.

It was also shown that Harrison went through the building each day, and that he directed and ordered the men. While the parties were thus situated a brick fell from the eighth floor, where the men were working, and struck Somer on the head and seriously injured him.

At the close of the plaintiff's case the defendants moved for a compulsory nonsuit, which the trial judge granted, delivering at the same time the following opinion:

I think we start with the proposition that it is received law that an injury caused by a fellow workman, and not done by direction of the master, even if done negligently by the fellow workman, does not make the master responsible.

In order in certain cases to fix the responsibility upon the master it is said, where the character of the fellow workman is that of a general superintendent, so that in some sense he assumes the position of the master and has the control which the

master has, that there the master is liable by reason of this general control having been imparted to the superintendent, and in some sense making him thus responsible, as though it were the act of the master or employer.

But I think a little confusion has been introduced into the cases by the use of some language, as, for instance, where it is said that the general superintendent or master workman, whoever he is, has the right of employment of the workmen, as illustrating that he is armed with the same power as the employer. I think that class of cases, so far as I understand them, is properly limited to something done directly by the superintendent or master workman which leads consequentially and naturally to the injury inflicted. The mere fact of the employment of workmen is no higher act than would be that of the master himself. If they were employed by the master, it would not make the master responsible for an injury consequent to a fellow workman; and the illustration of employment is only put in connection with some other act as showing the authority of the superintendent or master workman.

In this case I do not think the evidence shows that it was brought to the attention of either the superintendent or of Mr. Harrison that this man was in a dangerous position. The work that was done up above was of a general character. I suppose, in removing this planking, whatever it was, it was done first at one point and then at another point; and if anything fell, it was heard at various positions over the building; and there is nothing to indicate that anything had fallen previously immediately over this man and his fellow workman who was with him. He appears to have been placed there by this fellow workman, who wanted somebody to assist him, and who had no power at all other than being permitted to take the man with him and to occupy the position which he did.

It appears also that the space was open at the top, so that they could see from the position where they were to the top of the building, and nothing to indicate that there was likely to be anything to happen at that position in the way of danger.

Nor is it satisfactorily and clearly shown how the accident happened. If there was nothing above, there was nothing to fall perpendicularly upon the head of this man. It is possible, by placing a board, if it were in a certain position, that it might get an impetus and a graded fall that would possibly reach to

this man; but even that is not shown. It is not shown from what direction this brick came. Whether there were bricklayers immediately above the plaintiff is not shown by the evidence, although it is stated that bricklayers were employed there. It does not follow that this brick might not have been thrown from some position and fallen upon this man. If, for instance, there was a brick in the way in handling a plank, or anything of the kind, a workman might negligently pick it up and give it a cast from him. This could scarcely be anticipated by an employer or by a superintendent. Therefore, in addition to what I consider the general law on the subject, that this accident appears to have been the result of negligence of the fellow workman, there is the uncertainty as to how it happened at all, which I think ought to have been more clearly pointed out before the jury can be asked to say that there was a responsibility for it. It would be in some sense guessing into a verdict to make the employer responsible under these circumstances. I therefore grant the motion for a nonsuit.

Subsequently the court on motion refused to take off the non-suit.

The assignments of error specified the entry of the nonsuit and the refusal to take it off.

*John T. Green* and *James W. M. Newlin,* for plaintiff in error.—Where the neglect or fault of the master has caused the injury, he is liable. Whart. Neg. §§ 205, 232–235; Wood, Mast. & S. § 244; Tarrant v. Webb, 18 C. B. 797; Roberts v. Smith, 2 Hurlst. & N. 213; Ashworth v. Stanwix, 3 El. & El. 701; Brown v. Accrington Cotton Spinning & Mfg. Co. 3 Hurlst. & C. 511; Johnson v. Bruner, 61 Pa. 58, 100 Am. Dec. 613; Ardesco Oil Co. v. Gilson, 63 Pa. 150; Perry v. Ricketts, 55 Ill. 234; Flike v. Boston & A. R. Co. 53 N. Y. 549, 13 Am. Rep. 545; Horner v. Nicholson, 56 Mo. 220.

The master is liable when negligent, even though a fellow servant contribute to the injury. Wharton, Neg. § 234; Matthews v. M'Donald, 3 Macph. Sc. Sess. Cas. 506; Paulmier v. Erie R. Co. 34 N. J. L. 151; Boyce v. Fitzpatrick, 80 Ind. 527; Stetler v. Chicago & N. W. R. Co. 46 Wis. 497, 1 N. W. 112.

If the master has knowledge of facts which he, by using ordinary thought, might know would result in injury to a servant,

it is his duty to inform the servant, and if he does not, it is negligence on his part, for which he is liable. Wood, Mast. & S. § 364; Perry v. Marsh, 25 Ala. 659; Hallower v. Henley, 6 Cal. 209; Baxter v. Roberts, 44 Cal. 187, 13 Am. Rep. 160; Mellors v. Shaw, 1 Best & S. 437; Leonard v. Collins, 70 N. Y. 90; Faulkner v. Erie R. Co. 49 Barb. 324; Ryan v. Fowler, 24 N. Y. 410, 82 Am. Rep. 315; Wright v. New York C. R. Co. 25 N. Y. 565; Noyes v. Smith, 28 Vt. 59, 65 Am. Dec. 222.

A servant, injured by combined negligence of his master and of a fellow servant, can recover against the master, upon the ground that the master was one of two joint wrongdoers and, as such, responsible to the injured servant. Paulmier v. Erie R. Co. 34 N. J. L. 151.

Where a master personally assumes the direction of work which is being performed by his servant, and, in consequence of following the directions, the servant is injured, the former is liable, where the danger incurred was not known to the servant— was not obvious to him from his point of observation, and he had reasonable cause to believe that he could follow the directions in safety, and was in the exercise of due care. Haley v. Case, 142 Mass. 316, 7 N. E. 877; Weblin v. Ballard, L. R. 17 Q. B. Div. 123.

Where one invites another, even though the latter may be an employee, to cross his premises along a particular way, it is implied that the way is safe; and the person invited thereon has a right, in the absence of knowledge to the contrary, to assume that the way is at least reasonably safe. Hawkins v. Johnson, 105 Ind. 29, 55 Am. Rep. 169, 4 N. E. 172.

Ordinary care on a railroad company's part implies, as between it and its employees, not simply the degree of diligence which is customary among those intrusted with the management of railroad property, but such as, having respect to the exigencies of the particular service, ought reasonably to be observed. Bean v. Oceanic Steam Nav. Co. 24 Fed. 124.

Known and foreseen dangers not necessarily incidental to the business are to be avoided, if practicable, unless the employee knowingly accepts the risk. Wabash R. Co. v. McDaniels, 107 U. S. 454, 27 L. ed. 605, 2 Sup. Ct. Rep. 932.

Plaintiff was unexpectedly called from his work to assist a coservant, and, stepping upon a platform which the latter assured him was safe, fell through and was injured. Held, that the

question of his contributory negligence should have been left to the jury.   Benzing v. Steinway & Sons, 101 N. Y. 547, 5 N. E. 449.

Aside from the negligence of Alfred Harrison, the defendants are liable because of the negligence of Mr. Carstens, the general superintendent, who as such was bound to know the positions of the workmen and the nature of their work, which, if it endangered any of the other workmen, he should have stopped; and his neglect to do this imputes negligence to the defendants, just as much as if a servant was injured by a defective piece of machinery; for if Carstens, being general superintendent and having power to bind defendants, did not know that which it was his plain duty to know, or omitted to do that which it is his duty and office to perform, he is analogous to the piece of defective machinery, and his neglect is the neglect of the defendants.

A railroad corporation is liable for injuries sustained by an engineer through the negligence of the conductor.   Chicago, M. & St. P. R. Co. v. Ross, 112 U. S. 377, 28 L. ed. 787.

Carstens employed and discharged employees and had general charge of the men; therefore he was not a fellow servant, for a superintendent who can employ and discharge will bind the firm by his negligence.   Tyson v. South & North Ala. R. Co. 61 Ala. 554, 32 Am. Rep. 8; Mitchell v. Robinson, 80 Ind. 281, 41 Am. Rep. 812.

The principle which exempts the master from liability for injuries caused by a fellow servant does not excuse the master from the exercise of reasonable care in supplying and maintaining suitable instruments for the work required; nor are these agents charged with supplying proper machinery to be regarded as fellow servants, but rather as charged with the duty which the master owes to the servant, and that the neglect of such agents is to be regarded as the neglect of the master.   Pennsylvania & N. Y. Canal & R. Co. v. Leslie, 16 W. N. C. 321.

A master is liable to his servants for injuries sustained by them through the negligence of a middle man under whose absolute control he places them.   Wharton, Neg. §§ 232, 235 b.

The master of men in dangerous occupations, is bound to provide for their safety, and this obligation extends equally to the providing of good and sufficient machinery and to the procuring of skilled and judicious men by whom it is to be controlled.

Wharton, Neg. § 232, b; Lawler v. Androscoggin R. Co. 62 Me. 466, 16 Am. Rep. 492; Flike v. Boston & A. R. Co. 53 N. Y. 549, 13 Am. Rep. 545; Indianapolis, B. & W. R. Co. v. Carr, 35 Ind. 510; Wonder v. Baltimore & O. R. Co. 22 Md. 411, 3 Am. Rep. 143.

Where a ladder hole is cut in a platform to a mine while it is in active operation, by the direction of the superintendent, and one who is employed in the mine, for want of a railing, or light, or want of warning, falls through the hole and is injured, the company operating the mine is liable for the damage sustained, whether the person so injured was a servant or contractor. Mayhew v. Sullivan Min. Co. 76 Me. 100.

It is only where the master or superior places the entire charge of his business or a distinct branch of it in the hands of an agent or subordinate, exercising no discretion or oversight of his own, that the master is held liable for the negligence of such agent or subordinate. Mullan v. Philadelphia & S. Mail S. S. Co. 78 Pa. 25, 21 Am. Rep. 2; New York, L. E. & W. R. Co. v. Bell, 17 W. N. C. 458.

Upon a state of facts admitted or proved by direct and uncontradicted testimony, it is the province of the court to pronounce the law applicable thereto; but when alleged facts are the subject of inference from other facts and circumstances shown by the evidence, it is the exclusive province of the jury to consider the testimony and ascertain the facts under proper instructions from the court. Longenecker v. Pennsylvania R. Co. 105 Pa. 328.

When material facts are not admitted, or inferences of fact are to be drawn from the testimony, it is the exclusive province of the jury to consider and pass upon the testimony. McCallin v. Herzer, 4 Sad. Rep. 64.

While a servant will be deemed to have assumed all risks naturally and reasonably incident to his employment, and to be acquainted with all risks which, to a person of his experience and understanding, are or ought to be open and obvious, yet where there is any doubt whether the servant was so acquainted, or ought so to have been, the determination of the question is necessarily for the jury. Rummell v. Dillworth, P. & Co. 111 Pa. 343, 2 Atl. 355, 363.

Here the testimony clearly proves negligence in defendants Harrison and Carstens. Even if it only tended to prove it, so

that a jury might infer it, the nonsuit was erroneous.   Johnson v. Bruner, 61 Pa. 64, 100 Am. Dec. 613.

Negligence is always a question for the jury, when there is any doubt as to the facts or the inference to be drawn from them.   Baker v. Allegheny Valley R. Co. 95 Pa. 211, 40 Am. Rep. 634; Payne v. Reese, 100 Pa. 306; Bevan v. Insurance Co. 9 Watts & S. 187; Howard Exp. Co. v. Wile, 64 Pa. 201; Philadelphia & R. R. Co. v. Heil, 5 W. N. C. 91; Maynes v. Atwater, 88 Pa. 497; Hill v. Nation Trust Co. 15 W. N. C. 562.

*Richard C. McMurtrie,* for defendants in error.—The owner, constructing an immense factory with iron girders, passes through the house inspecting the work.   He is said to have seen a man at work on the fourth floor and a man at work on the eighth floor.   The space between was open.   An hour after that a brickbat falls on the lower man.   How it was put in motion is to be inferred only.   Can it be said that there was here any one of the elements required for making the owner or employer liable for the injury resulting ?

1. It was the most probable of all the risks attending building. The municipal regulation requiring sidewalks to be covered when building is going on is based on the certainty that such accidents will otherwise happen.

2. What did the owner know that the servant did not know ?

3. What did the owner know that he had any reason to suspect the servants did not know—the servant putting the brickbat in motion or the servant struck at it?

The present case has no relation to defects of machinery or prior preparations, such as scaffolds, or occult qualities of materials.

The danger must have been one which the plaintiff could not detect with ordinary care,—*i. e.,* he could not have known that men were working above and likely to throw down rubbish when at work on flooring.   Sykes v. Packer, 99 Pa. 469; Aldridge v. Midland Blast Furnace Co. 78 Mo. 559; Potts v. Plunkett, 33 L. T. 111.

Ignorance of the servant and knowledge of the master must concur.   Ryan v. Fowler, 24 N. Y. 410, 82 Am. Dec. 315; English v. Chicago, M. & St. P. R. Co. 24 Fed. 906; Griffiths v.

London & St. K. Docks Co. L. R. 12 Q. B. Div. 493; Hayden v. Smithville Mfg. Co. 29 Conn. 548.

The exposure of the master to the same risk shows that the same care was taken of the servant as of the master; and that is all that is required. Sykes v. Packer, 99 Pa. 469; Priestly v. Fowler, 3 Mees. & W. 1.

Illustrations of the rule: That the risk was one assumed by the servant ordered to go on slippery platform, if known to be so (English v. Chicago, M. & St. P. R. Co. 24 Fed. 906); presumed acquaintance with risks of ship, from being nineteen years old, having been at sea and lived near the shore (Williams v. Churchill, 137 Mass. 243, 50 Am. Rep. 304); from mail bags thrown into car when in motion (Coolbroth v. Maine C. R. Co. 77 Me. 165); absence of block in the space between rails is like a hole in the track (Mayes v. Chicago, R. I. & P. R. Co. 63 Iowa, 562, 14 N. W. 340, 19 N. W. 680); engine run contrary to orders (Wabash, St. L. & P. R. Co. v. Conkling, 15 Ill. App. 157); defect of road employed to repair (Brick v. Rochester, N. Y. & P. R. Co. 98 N. Y. 211); if danger belongs to work or service (Perry v. Marsh, 25 Ala. 659); open ditch or trench when cars are being coupled (De Forest v. Jewett, 23 Hun, 490); bridge over railroad, so low as to require stooping (Baltimore & O. R. Co. v. Stricker, 51 Md. 47, 34 Am. Rep. 291; Baylor v. Delaware, L. & W. R. Co. 40 N. J. L. 23, 29 Am. Rep. 208); coal thrown from engine by driver, if the servant is a fellow servant (Chicago & N. W. R. Co. v. Moranda, 93 Ill. 302, 34 Am. Rep. 168); from worn rails being used for sidings (Michigan C. R. Co. v. Austin, 40 Mich. 247).

PER CURIAM:

There was no error in ordering the compulsory nonsuit nor in refusing to take the same off. It is clear that the plaintiff was a fellow servant with the others who were engaged in performing the same general work. The plaintiff had ample opportunity of knowing the kind of work being done above him, and his consequent danger.

Judgment affirmed.